IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>BRADLEY ALLEN,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS<br><br><br><br>Case No. 1:04-CR-112 TS |

## I.   INTRODUCTION

This matter is before the Court on Defendant's Motions to Suppress.  Defendant's motions relate to the issuance of two search warrants.  The first warrant issued was on July 7, 2004, for an apartment located on Washington Blvd., Ogden, Utah and the second was issued on August 30, 2004, for an apartment located on 23rd Street, Ogden, Utah.  Defendant seeks to suppress the evidence seized during the execution of these search warrants on the grounds that information included in the Affidavits in support of the search warrants failed to establish probable cause to support searches of the premises.  The Court finds that the Affidavits were sufficient to establish probable cause to search the apartments.  Accordingly, the Motions to Suppress are denied.

## II.  FINDINGS OF FACT

A.  The July 7, 2004 Search Warrant[1]

On July 7, 2004, a Weber Morgan Narcotics Strike Force Agent ("Agent") received information from a complainant ("complainant") about a person named "Brad," who was living in Apartment #16 (Apt. #16) in their apartment building on Washington Blvd., in Ogden, Utah.  The complainant told the Agent that there was "a high volume of foot and vehicle traffic coming and going from the apartment complex . . . all the people went to Apartment #16."[2]  The complainant also stated that between ten to fifteen people would visit Apt. #16 per day and each person stayed only a few minutes.  The complainant stated he or she had witnessed this type of traffic before and in their experience it was consistent with the sale of illegal drugs.

After receiving this information from the complainant, the Agent went to the apartment and knocked on the door to Apt. #16 and eventually spoke with Defendant.  As the Agent spoke with Defendant, he noticed scars and scabs on Defendant's arm which the Agent recognized as consistent with drug use.  Additionally, the Agent could smell the odor of marijuana coming from inside the apartment.  Defendant declined consent when the Agent asked if he could search the apartment.

The Agent ran a background check on Defendant; there was a warrant for Defendant's arrest for Possession of Marijuana and Possession of Drug Paraphernalia.  The Agent arrested Defendant on the outstanding warrant.

---

[1]The following facts appear in the July 7, 2004 Affidavit in Support of Search Warrant (the July Affidavit).

[2]July Affidavit, at 2.

Approximately fifteen minutes after Defendant's arrest, the Agent noticed two females walk out of Apt. #16.  The Agent approached and spoke with the females.  The first female told the Agent that she had been inside the Defendant's apartment and, about two hours earlier, had smoked methamphetamine ("meth"), that the meth belonged Defendant, and that she did not know how much was left.  She also explained to the Agent that before he had knocked on the door, she had been making meth pipes in the apartment for the purpose of smoking the substance.  The second female admitted to being friends with Defendant and told the Agent that Defendant was a "user of narcotics," specifically, meth and marijuana.

Approximately thirty minutes later, the Agent ran a criminal history check on Defendant that revealed seven previous arrests for drug charges.  The Agent included in his July Affidavit the above-stated facts. The state court judge reviewed the July Affidavit and signed the search warrant on July 7, 2004.

B.   The August 30, 2004 Search Warrant[3]

On August 30, 2004, an informant ("informant"), told Box Elder County Strike Force agents about two locations where individuals were manufacturing meth and where meth was also either used or sold.   The informant identified the two locations, the latter of which was an apartment on 23rd Street in Ogden, Utah.  A search warrant was issued for the first location and agents found "a small amount of methamphetamine and marijuana . . . along with glassware."

---

[3]The following facts appear in the August 30, 2004 Affidavit in Support of Search Warrant (The August Affidavit).

3

The informant then went with the agents to the second address, on 23rd Street, and pointed out the apartment "by the driveway."  The informant stated that the day before the informant had been in the apartment and had been "fronted" an ounce of meth by a man named "Brad," who lived there, and had seen numerous chemicals and hoses in the living room of the apartment.

The agents relayed the information regarding the second address to the Officer (the Officer) who eventually submitted the August Affidavit.  Although the informant remained confidential, the Officer had the informant's personal information.  The Officer knew from his training and experience that hoses and chemicals are indicative of manufacturing meth and that the glassware found in the first location also could be used to manufacture meth.

The Officer, together with other agents, then went to the second address—Defendant's apartment—where they saw him leaving with a female.  Defendant was arrested for an outstanding federal warrant resulting from the execution of the July 7, 2004, search warrant.  The female gave the agents consent to search her car, where agents found a marijuana bong.  She denied it was hers.  She also admitted to the agents that she had used meth in the past.

The Officer observed that Defendant had numerous sores and scabs on his body, which in the Officer's training and experience, was consistent with habitual drug use.  Defendant refused to consent to a search of his apartment. The officers called the apartment owner.  The owner told officers that he was aware that Defendant used and possibly sold narcotics and had only been living there a short time.  The owner gave verbal and written permission to search the apartment, but the officers did not enter the apartment at that time.

At about 4:00 p.m. on the same day, the Officer received information that yet another agent had spoken to a second informant about Defendant. The second informant confirmed that the first informant had been at Defendant's apartment the night before and had used meth. Additionally, the second informant stated that he or she had also been at Defendant's apartment earlier that same day and had received meth from Defendant.

The Officer then ran a criminal history check on Defendant and found seven previous arrests for drug-related charges, including operation of clandestine meth labs. The Officer included the above information in his August Affidavit, some it in the form of handwritten additions. Based on the collective information, the magistrate issued a search warrant for Defendant's apartment on August 30, 2004.

### III.  DISCUSSION

#### A.  Probable Cause Standard

The Supreme Court has held that "a magistrate judge's task in determining whether probable cause exists to support a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4] "Where the underlying circumstances are detailed, where reasons for crediting the source of the information are given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by

---

[4]*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

interpreting the affidavit in a hypertechnical, rather than a common-sense, manner."[5]  The affidavit "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion."[6]  The government simply has to show that the issuing magistrate had a "substantial basis" for determining that probable cause existed and that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[7]  The Court reviews the sufficiency of an affidavit based on the totality of the circumstances.[8]  A magistrate's determination of probable cause should be paid great deference by reviewing courts.[9]

    B.   The July 7, 2004 Search Warrant

Defendant contends that the July Affidavit failed to establish probable cause for the issuance of the search warrant for the following reasons: 1) the complainant's information cannot overcome a "staleness" argument; 2) no significance can be derived from the information given by the complainant; 3) the Agent failed to corroborate the information; 4) the information given by the two females leaving Defendant's apartment is flawed; 5) Defendant's criminal record was not sufficient to establish probable cause; and 6) the *Leon* good faith exception does not apply.

The government asserts that viewing the "totality of circumstances," the information given by the complainant, the statements made by the two females, the odor of marijuana coming from

---

[5] *United States v. Ventresca,* 380 U.S. 102, 109 (1965).

[6] *Id*. at 108.

[7] *Gates,* 462 U.S. at 238-39.

[8] *United States v. Tuter,* 240 F.3d 1292, 1295 (10th Cir. 2001).

[9] *Gates,* 462 U.S. at 236.

inside the apartment, and Defendant's criminal history involving similar offenses, give rise to probable cause.  It further contends that even if the Court finds no probable cause, the evidence found at the apartment should not be suppressed because the officers executing the warrant acted in good faith pursuant to *Leon.*

Turning first to the staleness argument, Defendant argues that because the July Affidavit did not state the dates or the number of times when the complainant allegedly observed the heavy traffic to Apt. #16, the government cannot show the information was not stale.  The government argues that the information received from the complainant suggested an "ongoing and continuous activity;" thus, the passage of time becomes less critical.

The Tenth Circuit has found that a search warrant may not be issued if based on information that has grown stale, *i.e.* "information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched."[10]

The Court finds that the information from the complainant was not stale.  The same day the tip was received, the Agent spoke to the complainant, investigated the tip and submitted the July Affidavit.  Although the dates of the suspicious activity are not stated, the complainant's statements indicate current, on-going and continuous activity rather than a complaint about past activity which is remote in time.

Defendant next argues that no significance can be attributed to the information obtained from the complainant because the complainant's allegations are severely inadequate.  In particular, he contends that the July Affidavit does not state whether the complainant was a citizen informant or

---

[10]*United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir. 1990).

a criminal; there is no evidence of the complainant's veracity or reliability; there is no mention of the complainant's past dealings with the police; no motive is offered for why the complainant made the complaint; the complainant did not say he or she had been inside the apartment or witnessed drug transactions; and the Affidavit does not state if the observations were made on more than one day. Defendant contends that without this type of information, the complainant's "veracity, reliability, or basis of knowledge," cannot be determined.[11]

According to the government, the complainant offered significant information sufficient to establish probable cause.

Even if a court entertains "some doubt as to the informant's motives, his explicit and detailed description of alleged wrongdoing along with a statement that the event was observed first-hand, entitled the tip to greater weight than might otherwise be the case."[12] Further, if an officer corroborates an informant's information, the need to establish reliability and veracity of the informant is decreased.[13] An officer need not "corroborate information received from an informant through *personal* observation . . . . rather, an officer simply must have knowledge of other matters that reasonably corroborate the informant's statements."[14] Thus, contrary to Defendant's argument, the Agent need not corroborate the informant's information by his own personal observation of the

_____

[11] *Gates*, 462 U.S. at 230.

[12] *Id.* at 234.

[13] *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000).

[14] *United States v. Mathis,* 357 F.3d 1200, 1204 (10th Cir. 2004) (emphasis in original).

heavy short-term traffic, or by setting up a controlled buy, but instead can rely on "other matters that reasonably corroborate" the informant's statements.

The Court finds that the complainant's information was explicit and detailed, down to the approximate number of persons who daily went to Apt. #16.  The Affidavit explains that the complainant wished to remain anonymous.  But it also sets forth that the Agent spoke directly to the complainant who stated the information was observed first-hand and explains the basis of the complainant's suspicion—prior experience with this type of short-term traffic.  The July Affidavit does not rely solely on the complainant's information, but treats it as a citizen tip followed by the Agent's investigation.  Under these circumstances, the information is entitled to weight even in the absence of specific information about the complainant.

Defendant also argues that the July Affidavit fails to establish probable cause for the issuance of the search warrant because the Agent did not corroborate the information received from the complainant.  The government contends that the Agent adequately corroborated the complainant's statements.

The Court finds that the Agent corroborated the tip of suspicion of illegal activity in the apartment.  The Agent knocked on the apartment door and rapidly ascertained the following: there was odor of marijuana coming from inside the apartment; a person who identified himself as Defendant eventually came to the door; his name was consistent with the informant's statement that "Brad" lived there; he had scabs on his body, a circumstance the Agent knew to be consistent with drug use;  Defendant had an outstanding warrant for his arrest for possession of marijuana; one of the females exiting the apartment shortly thereafter said that only two hours before she and

Defendant had used meth provided by Defendant; the female also admitted she had been making drug paraphernalia in the apartment; and Defendant had an extensive criminal drug history. All of this information was included in the July Affidavit. Accordingly, the Court finds that the Agent took the appropriate steps to corroborate the information received from the complainant.

Defendant argues that because the Agent specified neither whether the marijuana he smelled coming from the apartment was "raw or burnt" nor its intensity, the statement as to the smell did not "create an inference that the odor was related to drugs in the apartment as opposed to all the other explanations."[15]   Defendant also argues that the Agent's observations of scabs and scars on Defendant's arm was not an indicator that Defendant was currently using drugs or that drugs would be found in his apartment.

The government concedes that federal courts have imposed a particularized requirement that the marijuana odor must be shown to be particularized to a specific person or place.[16]   The government argues that this particularized requirement was met because the Agent smelled the odor of marijuana when the apartment door was opened, which indicates that the odor was "particularized" to the Defendant's apartment.

---

[15]Defendant's Motion to Suppress Memo, at 9.

[16]Citing *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("In the case of a search, when the odor of marijuana emanates from a confined location such as an automobile or an apartment, we have held that officers may draw the conclusion that marijuana is present in the automobile or apartment."); *United States v. Parker,* 72 F.3d 1444, 1450 (10th Cir. 2004) (finding probable cause to search car trunk where trooper smelled marijuana in the passenger compartment and also found corroborating evidence).

The Court notes that the Tenth Circuit has not specifically determined whether the smell of marijuana coming from a residence would by itself establish probable cause for a search warrant. [17] From the July Affidavit, it appears that the apartment door was already open when the Agent arrived.[18] But the July Affidavit states that from that open door the Agent could "smell the odor of marijuana *coming from inside* the apartment."[19]   The Court finds that this was sufficient particularization to the specific location at issue.  Further, in this case, this Court need not determine if the odor alone is sufficient to establish probable cause to believe that there was marijuana in the apartment because the odor was only one piece of the entire picture presented to the magistrate for a determination of probable cause.

Similarly, the Court need not determine if, as Defendant argues, the observation that Defendant had scabs on his arms was only an indicator that he may be a drug user, not an indicator that there may be drugs in the apartment.  The suspicion that Defendant was a drug user based on the scabs was only one piece of the information presented.  The larger picture showed that one of the persons leaving the apartment stated that she and Defendant had earlier used his meth in the apartment, corroborating the complaint's tip of suspicious activity in the apartment.

Also, Defendant contends that the information received from the two females exiting his apartment does not establish probable cause for the issuance of the search warrant because the Affidavit does not provide the information needed to ascertain their veracity and reliability.

---

[17]*United States v. Morgan*, 160 Fed. Appx. 694, *3 (10th Cir. 2005).

[18]July Affidavit, at 2.

[19]*Id.* (emphasis added).

11

Defendant argues that while the first  female did admit that she smoked meth with the Defendant, this information does not indicate that more drugs are located within the apartment.  The second female made no statement that she saw any drugs on the premises.  Additionally, Defendant argues that the trustworthiness of the two females must be looked at critically, because they may have wanted to exculpate themselves by incriminating Defendant.

The government asserts that the two females corroborated the complainant's statements.  The first female gave self-incriminating evidence by stating that she had used drugs in the apartment with Defendant that very day.  According to the government, this statement shows reliability, not an attempt to exculpate herself, as Defendant claims.

The Court finds that the two females did provide information corroborating the complainant's statements.  As noted, the first female reported using Defendant's drugs, with Defendant, in the apartment only two hours earlier.  While she stated she didn't know how much meth Defendant had left, her statement implied that some meth remained.  Further, her statement that she had recently been in the apartment making drug paraphernalia for the purpose of meth use supported the complainant's tip regarding the apartment. The other female provided further information that Defendant was a user of meth—corroborating information provided by the first female—and of marijuana, which the Agent could smell coming from the apartment.

Next, Defendant posits that his criminal record is not enough to establish probable cause absent a showing of other material factors.  The government asserts that other material factors have been established, including a warrant check and discovery of an outstanding warrant for Defendant

12

on charges for Possession of Marijuana and Possession of Drug Paraphernalia which indicated that complainant's allegations were reliable.

While criminal history in itself is not enough to establish even reasonable suspicion,[20] "a criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause."[21] The Court finds that there were other material factors included in Affidavit, thus the magistrate could properly take Defendant's criminal record into account in establishing probable cause.

In sum, Defendant attempts to have each supporting fact viewed in isolation and argues that each is not sufficient to establish probable cause. But the Court is mindful that in "assessing whether the warrant was based on probable cause, we do not view each supporting fact or episode in isolation. While one fact alone may not support a finding of probable cause, a cumulative assessment may indeed lead to that conclusion."[22] Based upon the collective information in the July Affidavit, the Court finds that the issuing judge properly "made a practical, common-sense decision . . . that given all the circumstances set forth in the affidavit . . . there was a fair probability that contraband or evidence of a crime would be found in a particular place."[23] Thus, the government has met its burden of showing that the issuing judge had "a substantial basis for concluding that probable cause

---

[20]*United States v. Sandoval,* 29 F.3d 537, 542 (10th Cir. 1994).

[21]*United States v. West,* 219 F.3d 1171, 1179 (10th Cir. 2000); *United States v. Myers,* 106 F.3d 936, 939 (10th Cir. 1997).

[22]*United States v. Cantu,* 405 F.3d 1173, 1177 (10th Cir. 2005).

[23]*Gates,* 462 U.S. at 238.

existed" to issue the July 7, 2004 warrant.[24]  Having determined that the Affidavit demonstrated probable cause, the Court need not address the parties' arguments regarding the *Leon*[25] exception. Accordingly,  Defendant's Motion to Suppress based on the July 7, 2004, search warrant will be denied.

### C.   The August 30, 2004 Search Warrant

Initially, Defendant challenges the August 30, 2004 search warrant on the grounds that the supporting Affidavit is "impermissibly conclusory"[26] because its plain language does not draw the "required causal links" needed to establish probable cause.  Defendant contends that it is so conclusory it should be stricken.   The government contends that the information contained in the August Affidavit establishes probable cause.

Defendant is correct that a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" is insufficient to establish probable cause.[27] But the Court finds that the August Affidavit recites specific facts and is, therefore, far from being the type of affidavit consisting solely of a "mere conclusory statement" in the case relied upon by Defendant.[28]

---

[24]*United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) (quoting *Gates*, 416 U.S. at 238-39).

[25]*United States v. Leon,* 468 U.S. 897 (1984) (holding that even if warrant issued without probable cause, evidence will not be suppressed if officers acted in "good faith" in executing warrant).

[26]Def.'s Mem., at 5.

[27]Gates, 462 U.S. at 239.

[28]Def.'s Mem., at 5 (citing *Gates, supra*).

Defendant further contends that the August Affidavit failed to establish probable cause for the following reasons: 1) all the information relied on from the search warrant dated July 7, 2004, must be disregarded; 2) no significance can be attributed to the information received from the informant; 3) the Officer failed to corroborate key information; 4) the visit to the apartment provided minimal evidence supporting a finding of probable cause; 5) information obtained from the apartment owner and jail inmate were fundamentally flawed; 6) Defendant's criminal record was not sufficient to prove probable cause; and 7) the *Leon* good faith exception does not apply.

The government asserts that there were sufficient facts in the August Affidavit of the Officer to support the magistrate's finding of probable cause. The government also asserts that the information relied upon from the July 7, 2004 search warrant should not be disregarded. However, even if the evidence obtained in July were found to be inadmissible, the government contends that the remainder of the August Affidavit still constitutes probable cause. Moreover, because the officers relied on the search in good faith, the search should be upheld pursuant to the *Leon* exception.

Defendant asserts that because the July Affidavit did not establish proper probable cause for the July 7, 2004 search warrant all the evidence obtained via that July 7, 2004 search warrant is "tainted" and must be disregarded in reviewing the August 30, 2004, Affidavit. Defendant asserts that when this prior evidence is excluded, the remainder of the Affidavit does not support a finding for probable cause.

The government argues that the information relied upon from the July 7, 2004 search warrant should not be disregarded in determining whether probable cause existed. The government

distinguishes the case relied upon by Defendant, *United States v. Anderson*,[29] on the grounds that it involved evidence obtained through a prior *warrantless* search, which constituted "prior illegality."[30]

The Court has determined, above, that the search that occurred on July 7, 2004, was pursuant to a valid search warrant based on probable cause.  From that recent search of Defendant's previous apartment, agents recovered meth, heroin, marijuana, and glassware that, in the Officer's training and experience, could be used to manufacture methamphetamine.  By itself, that information did not show probable cause for a search of Defendant's new apartment; but it was part of the collective picture that may be considered in determining whether there was a fair probability that contraband or evidence of a crime would be found at Defendant's new apartment.[31]  In addition, this information was relevant to an event recited in the August Affidavit—the Officer's arrest of Defendant on the warrant arising from the July 7, 2004 search.

Defendant believes that no significance can be attributed to the informant's allegation that meth was being manufactured at Defendant's apartment because "the affidavit fails to relay the required information upon which a determination of reliability can be made."  Defendant contends that the August Affidavit fails to satisfy the reliability test because there are no details as to the relationship the informant had with law enforcement officers, whether he or she was seeking to exculpate themself from criminal charges by providing the information, and so forth.  Defendant also argues that the informant's tip regarding the first property does not establish probable cause because

---

[29]981 F.2d 1560 (10th Cir. 1992).

[30]*Id.* at 1568.

[31]*Gates,* 462 U.S. at 238.

the August Affidavit fails to reveal to whom the informant gave the information regarding the first property; the Officer did not attach the Affidavit used to support the search at that property; no substantial drugs were found at the first property; and the Officer's use of the word "glassware" which was found at the first apartment is too vague and inconclusive. Defendant asserts a total lack of connection between the information garnered about the first property and the informant, which undermines the reliability of the informant's tip with regard to the second property. Also, Defendant argues that such a "small" amount of drugs were found at the first property, that it further undermines the informant's credibility and veracity. Last, Defendant believes that no significance can be given to the information obtained from informant because he or she did not know the exact address of the apartment; he or she only pointed it out to the officers and said it was "by the driveway."

In order to establish reliability, the government points to the actions taken by the Officer to corroborate the information he had received from the informant.

The Court notes that the August Affidavit did inform the issuing judge of a factor that would establish the informant's relationship with law enforcement—the fact of the informant's own arrest. Further, the Supreme Court has held that an informant's tip can be sufficient to establish probable cause if, in the "totality of the circumstances," there is reason to believe it is reliable.[32] "When an informant is shown to be right about some things, he [or she] is probably right about other facts that

---

[32]*Gates,* 462 U.S. at 230-32.

he [or she] has alleged, including the claim that the object of the tip is engaged in criminal activity."[33]

The Court finds that the August Affidavit establishes the Officer had reason to believe the reliability of the informant's tip. The Officer believed the informant was reliable because he or she was right about the first location, where marijuana, meth, and glassware were found. The Officer knew, through his experience and training, that the glassware could be used to manufacture meth.

The Court finds that the facts set forth in the August Affidavit show that the Officer sufficiently corroborated the information from informant. The information was related to the Officer by other officers as the informant went with them to point out the alleged meth manufacturing locations. It is not necessary that the August Affidavit set forth the identity of the other officer relaying the second informant's information to the affiant, so long as the August Affidavit showed "a substantial basis to find that evidence of a crime was probably present in the place to be searched.[34]

In the present case, the information relayed from the informant stated he or she had personally been at the second location and had personally received meth from a man he or she knew as "Brad" just the night before. The informant's statements about the first location were verified by material found during a search of that location. The Officer went to the second location the

---

[33] *Tuter*, 240 F.3d at 1296 (quoting *Alabama v. White,* 496 U.S. 325, 331 (1990)).

[34] *Mathis*, 357 F.3d at 1205-06) (finding affidavit supported probable cause even though an unknown number of law enforcement agents were involved in transmitting the informant's tips from witnesses to affiant) (citing *Rugendorf v. United States*, 376 U.S. 528 (1964) (finding probable cause even though the affidavit contained hearsay from confidential informants passed to the affiant from other law enforcement agents)).

informant pointed out, and ascertained that it was the only apartment at that location that was "near the driveway."[35]   The Officer saw the Defendant, whose name was Bradley, leaving the specific apartment the informant identified.  The Officer then arrested Defendant on an outstanding federal warrant for drug-related charges.  The Officer noticed sores on Defendant's arms and face which, in his experience and training, indicates meth use.  Defendant admitted he was a meth user and had used "recently."  The Officer interviewed the female companion that exited Defendant's apartment.  After consenting to a search of her car, drug paraphernalia was found.  Most significantly, the informant's information was corroborated by information received that same day by another officer from a second informant and than relayed to the Officer.  The second informant verified that the night before, the first informant had been present and received meth at Defendant's apartment.  The second informant also stated that he or she was at Defendant's apartment earlier in the day and had also received meth.  Lastly, the Officer ran a criminal history check which revealed seven previous arrests for drug-related charges.  Thus, not only had the informant proven to be reliable, but the Officer took further steps to corroborate the information he or she had given him. The information from the two informants was "internally corroborated in several respects"[36] and was based upon their personal knowledge.  The Court finds that based the totality of the circumstances described in the August Affidavit, the issuing judge had probable cause to believe that contraband would be present at Defendant's apartment.

---

[35]August Affidavit, at 3.

[36]*Mathis*, 357 F.3d at 1206.

Defendant additionally asserts because no other "factors" existed in the Affidavit, his criminal history alone cannot establish probable cause. As noted above, only when the criminal history is combined with other factors, can probable cause be supported.[37] As was the situation with the July Affidavit, because the government has proven the existence of other factors supporting probable cause for the issuance of the August search warrant, Defendant's criminal history could properly be considered by the magistrate.

The government has shown sufficient evidence to establish probable cause in the issuance of the search warrant. Therefore, it is unnecessary to address the parties' arguments regarding the *Leon* good faith exception.

Because the issuing judge had a substantial basis for concluding that probable cause existed, Defendant's Motion to Suppress based on the August 30, 2004 search warrant is denied.

## IV.  SPEEDY TRIAL EXCLUSION

The Court has considered all of the factors for exclusion of time from the time within which a trial shall be commenced under the Speedy Trial Act.[38] Because resolution of the suppression issues is necessary for effective trial preparation, the Court finds that the failure to exclude the time from the date of this order to the date of the new trial would deprive counsel for the government and for the Defendant the reasonable time necessary for the effective preparation for trial, taking into account the exercise of due diligence.

---

[37]*West,* 219 F.3d at 1179.

[38]18 U.S.C. §3161(h)(8)(B).

20

IV.   ORDER

For the reasons stated above, it is therefore

ORDERED that Defendant's Motion to Suppress evidence obtained as a result of the July 7, 2004, search warrant (Docket No. 87) is DENIED.  It is further

ORDERED that Defendant's Motion to Suppress evidence obtained as a result of the August 30, 2004, search warrant (Docket No. 86) is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of the this order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).  The time from the date of the entry of this Order to the date of the new trial setting is excluded from the computation of time within which trial must commence pursuant to 18 U.S.C. § 3161(h)(A).

DATED November 15, 2006.

BY THE COURT:

_____

TED STEWART
United States District Judge